JOHN REMSEN, Respondent, *v.* ROSWELL GRAVES, Appellant.

One who guarantees in writing the payment of a bond assigned by him, thereby estops himself from denying in an action on the guaranty, that the makers of the bond were competent to contract in the manner they did.

Accordingly, where a cemetery association organized under the general act,

executed to the defendant a bond for money loaned by him to them, which he subsequently assigned to the plaintiff, indorsing thereon, a guaranty to the plaintiff of the payment thereof.—*Held*, in an action on the guaranty, that the defendant would not be permitted to set up that the association were not authorized to issue such bond, or that the same was not a binding or valid obligation when issued.

The taking by the plaintiff of another bond at a higher rate of interest from the association, as collateral to the original, and having a longer time to run; and the receipt of interest on the said new bond, does not release the defendant on his guaranty, although it appeared that the principal debtor became insolvent subsequent to the taking of the new bond.

(Submitted October 9th, 1869, and decided December 22d, 1869.)

APPEAL from the General Term of the Supreme Court of the second district, affirming the decision of the Brooklyn city judge.

The Cemetery of the Evergreens is a corporation, incorporated under the general act authorizing the incorporation of rural cemetery associations, passed April 27, 1847. (Laws of 1847, ch. 133, p. 125.) The scheme of the act is to limit the capital of cemetery associations to their burial property, and to pay the original cost of the property and its subsequent embellishment and improvement, and all incidental expenses of management, out of the proceeds of the sale of burial plots; and it devotes such proceeds perpetually and exclusively to those purposes. Section 7 of the act reads as follows:

" One-half at least of all the proceeds of all the sales of lots or plots shall be first appropriated to the payment of the purchase money of the lands acquired by the association, until the whole purchase money shall be paid, and the residue thereof to preserving, improving and embellishing the said cemetery grounds, and the avenues or roads leading thereto, and to defraying the incidental expenses of the cemetery establishment. And after the payment of the purchase money and the debts contracted therefor, and for surveying and laying out the land, the proceeds of all future sales shall be applied to the improvement, embellishment and preservation of such cemetery, and for incidental expenses, and to no other purpose or object."

By the constitution of the association, its credit and power to borrow money are limited to the anticipation and pledge of the receipts to be derived from a sale of burial plots; and its power to fulfill its pecuniary obligations, contracted by an anticipation and pledge of its receipts, is limited to those receipts. In September, 1854, the cemetery property consisted of about 214 acres, worth upward of $200,000.

In January, 1853, Roswell Graves was a trustee of the cemetery corporation. The corporation, wishing to anticipate its receipts from the sale of plots, for the purpose of improving and embellishing the cemetery grounds, borrowed of Graves $3,562.46, for which it gave him a bond of the corporation, pledging, ratably with its other improvement bonds, a moiety of its anticipated receipts, pursuant to said act. The condition of the bond, and the terms of the recital which precedes it, are as follows:

"Whereas, the above named Roswell Graves has this day loaned to the above named, the Cemetery of the Evergreens, the sum of $3,562.46, which has been used for the purpose of improving and embellishing the said cemetery grounds, &c.

"Now, therefore, the condition of the above obligation is such, that if the above bounden, the Cemetery of the Evergreens, or their successors, shall well and truly pay, or cause to be paid, on or before the 3d day of September, which will be in the year 1854, out of the receipts of the said association, applicable according to the provisions of the act of incorporation (and in equal and ratable proportion with the other bonds of the said association given for similar liabilities of said cemetery association), unto the above named Roswell Graves, his executors, administrators or assigns, the just and full sum of $3,562.46, lawful money of the United States, with interest at the rate of six per cent per annum, payable half yearly, until the principal sum is paid; then the above written obligation to be void, otherwise to remain in full force and virtue."

This bond, number 40, was afterward assigned by Graves to the plaintiff. The assignment contains these words: "I

HAND — VOL. II.　　60

hereby guarantee *the due payment* of the moneys secured thereby."

Interest was duly paid up to July 1st, 1859. In 1854 the cemetery association informed the plaintiff that it could pay the bond, but that payment was not convenient, and offered, if he would let it remain, to pay seven per cent interest, and to issue and transfer to him a second bond for the like principal sum, and seven per cent interest, to secure and pay the sum so loaned by Graves; which offer the plaintiff accepted. Receipts for the payment of seven per cent interest, from July, 1854, to July, 1859, are indorsed upon bond. The new bond was not delivered till February, 1856.

In 1862 the appellant was sued in the city court of Brooklyn, on his guaranty. The only breach alleged in the complaint was, that the debt had been demanded and remained unpaid. The action was tried by the court without a jury. A motion for nonsuit was made on the following, among other grounds, viz. :

1. That by the condition of the bond it was payable, ratably, out of the receipts pledged under the act, and not otherwise.

2. That by the arrangement for increasing the rate of interest, and the giving of bond, and the voluntary delay to press for payment when it could have been obtained, the security was discharged.

The motion was overruled, and defendant excepted.

The court afterward rendered a decision in favor of the plaintiff.

The judgment for plaintiff was affirmed by the Supreme Court on appeal.

The judge found as matter of fact that this second bond was not taken in the place of the first bond, but on the contrary, was received as collateral security only, upon the same debt, and upon the express agreement that the former bond should remain in force. And he also found that this second bond was so received by the plaintiff, with the knowledge and consent of the defendant.

*Joshua M. Van Cott*, for appellant, cited, *Billington* v. *Waggoner* (33 N. Y. R., 31); *Smith* v. *Townsend* (25 id., 479); *Bangs* v. *Strong* (7 Hill, 252); *Place* v. *McIlvain* (1 Daly, 266); *Henderson* v. *Martin* (31 Barb., 297); *Dolson* v. *Christie* (39 id., 610); *Albany Ins. Co.* v. *Devendorf* (43 id., 444); *Bangs* v. *Mosher* (23 id., 478).

*James L. Campbell*, for respondent, cited, *Brown* v. *Curtis* (2 Comstock, 225); *Lynch* v. *Welch* (Seld. Notes, p. 13, Dec., 1852); *Bocklin* v. *Home Bay Pier Co.* (14 Eng. L. & Eq., 159).

MASON, J.   The defendant cannot be permitted to show, that this bond is invalid, on the ground that it was issued by the corporation for a purpose not authorized by its charter. The guaranty of payment of the bond by the defendant, imports an agreement or undertaking, that the makers of the bond were competent to contract in the manner they have, and that the instrument is a binding obligation upon the makers. (*Mason* v. *Eckford's Ex'rs*, 15 N. Y. R., 502; *Erwin* v. *Downs*, 15 N. Y. R., 575; *McLaughlin* v. *McGovern*, 34 Barb. R., 208; *Zabriskie* v. *Cleveland, Columbia & Cincinnati R. R. Co.*, 23 How. U. S. R., 399; *Coggill* v. *Am. Exchange Bank*, 1 Comst. R., 113.)

This action was tried before the city judge, without a jury, and we must assume the facts to be as he has found them. As he has found that this second bond was not taken in the place of the first bond, but, on the contrary, was received as a collateral security only, for the same debt, and upon the express agreement that the former bond should remain in force, I do not see, how the appellant can possibly claim he is discharged from his guaranty, by the giving of time to the principal debtors.   If this second bond was given merely as collateral security for the first bond, such bond will not be deemed extended, because that which is taken merely as collateral security, has time to run before it falls due.   There is another answer to this objection; the judge has found, as a matter of

fact, that this second bond was received by the plaintiff, with the knowledge and consent of the defendant.

If the defendant consented to an arrangement, the legal effect of which was to extend the time of payment to the principal debtor, he cannot certainly claim that he himself is discharged as surety thereby. The defendant having guaranteed the due payment of the bond, and the bond having a fixed time of payment, a default occurred when the day of payment had passed, and the principal debtors omitted to make payment. There is nothing in the objection, that the bond was, by its terms or condition, payable out of a particular fund. The agreement was, to pay this sum out of the receipts of the association.

There is an absolute agreement and undertaking, to pay this sum at the time stated; and they are not relieved from liability, because they have further agreed to pay it out of a particular fund. I am not able to perceive any error committed upon the trial, or in the judgment, and advise the affirmance of the judgment.

Murray, J. The Cemetery of the Evergreens gave its bond in question, conditioned to pay appellant $3,562.46, on or before the first of September, 1854, and out of the receipts of the said association, applicable according to the act of incorporation to the payment of such bonds, and in equal and ratable proportion with the other bonds of the said association given for similar liabilities of said association. The point is made by the exceptions taken on the trial, and on the argument here, that the respondent could not recover without showing that when the bond became due, the company had on hand sufficient funds, so that the proportionate shares of the funds applicable under the acts of incorporation to such bonds was equal to the amount due on this bond. The conclusion of the referee was, that the appellant having transferred the bond to the respondent, and at the same time guaranteed the due payment thereof, was liable for the amount unpaid on the bond. I think in that conclusion he

was correct. Reading the guaranty by the light of surrounding circumstances, due payment was understood by the parties to mean payment at the time fixed in the bond, doubtless the respondent received it understanding that he was getting the personal guaranty of the appellant, and from the evidence, it is very manifest, that the appellant understood he was giving his personal guaranty that the money should all be paid at the time fixed. It was therefore right and proper to give it that construction. The referee has found that the second bond was given by said association to the respondent for the same debt, but not in payment thereof, but as collateral thereto, and upon the express agreement that the first should remain in full force. That being the case, the bond was not thereby discharged. The referee also found, that respondent received the second bond with the knowledge and consent of the appellant. If the guarantor consented to the extension of time given by the second bond, it certainly could not have the effect of relieving him from his liability. He thereby consented to have the time of his liability extended as in the second bond.

If I am right in these views, the judgment of the General Term should be affirmed with costs.

All concurring for affirmance, judgment affirmed.