## STEVENS *v.* TRASK *et al.*

·(*Common Pleas of New York City and County, General Term.* March 7, 1892.)

PRINCIPAL AND AGENT—PROOF OF AGENCY.

> Plaintiff, in an action to recover the proceeds of certain bonds delivered by her to her husband, and by him delivered to defendants, to be credited to his account, tes- tified that her husband had authority only to collect, and not to sell, and that de- fendants were so informed, but it appeared that several years before action brought she had given orders for the dividends on certain stock, in which part of the proceeds ·of such bonds had been invested in her name by the husband, and afterwards re- pudiated, in a letter to defendants, an attempted transfer of such reinvestment. *Held,* plaintiff's testimony being contradicted by her own writings, that a verdict in her favor should be reversed.

Appeal from trial term.

Action by Julia A. Stevens against Spencer Trask and another to recover ·from defendants the proceeds of five bonds, of $1,000 each, of the Delaware & Hudson Canal Company, payable July 1, 1884, which plaintiff claims she caused to be delivered to the defendants for collection about said date. The defense was that the proceeds of the bonds were paid by the defendants to the husband of the plaintiff, from whom they were received for collection, he rep- resenting himself to be the owner of the same, and that such payment was made in good faith, and without any notice of the plaintiff's claim. From a judgment for plaintiff, defendants appeal. Reversed.

Argued before DALY, C. J., and BISCHOFF, J.

*Masten & Nichols, (Arthur H. Masten* and *Chandler P. Anderson,* of coun- ·sel,) for appellants. *C. C. & S. F. Prentiss, (G. W. Cotterill,* of counsel,) for ;respondent.

DALY, C. J. The evidence is undisputed that the bonds were delivered to ·the defendants by the plaintiff's husband, Thomas W. Stevens, together with ·the usual form of irrevocable stock power, executed by the plaintiff in blank. ·The act of the plaintiff in intrusting these documents to her husband invested ·him with the *indicia* of ownership, and conferred upon a purchaser in good ·faith for value a perfect title, not affected by any equities between plaintiff and ·her husband. *McNeil* v. *Bank,* 46 N. Y. 325. The defendants were holders ·for value because they credited the proceeds of the bonds upon the account of Mr. Stevens with them, for stocks which they had just purchased for him.

Were they purchasers in good faith without notice of plaintiff's title? Mr. Stevens swears that he told Mr. Peabody, one of the defendants, that the bonds belonged to his wife, and were to be collected for her. This is positively denied by Mr. Peabody; and if the case for the defendants rested there, without corroboration, it would have been oath against oath, (*Losee* v. *Morey*, 57 Barb. 561; *Raines* v. *Totman*, 64 How. Pr. 493; *Griffiths* v. *Hardenbergh*, 41 N. Y. 471,) and they would not have sustained the burden of showing that they were purchasers in good faith, (*Bank* v. *Diefendorf*, 123 N. Y. 200, 25 N. E. Rep. 402.) But the preponderance of proof on this branch of the case is with the defendants, for it appears from the written evidence in the case that the bonds were delivered to the defendants by Mr. Stevens, after a letter from them to him requesting margin or security upon his account with them, and that, when the bonds were received by them from the New York State National Bank, upon Mr. Stevens' order, they wrote informing him of the fact, and stating that they placed them to his account. There was no evidence that Mr. Stevens repudiated this disposition of the bonds, but, on the contrary, his wife's counsel offered in evidence a monthly statement received by him from defendants, showing a credit upon his account of the proceeds of these bonds, which statement he had retained for years without objection. The letter demanding the margin bore date June 23, 1884. The letter acknowledging the receipt of the bonds, and crediting Mr. Stevens' account with the proceeds, bore date June 24, 1884, and the statement bore date July 31, 1884. This action was commenced June 28, 1889. If Mr. Stevens had placed these bonds in the hands of defendants, to collect for his wife, we should expect him to immediately object to the disposition which defendants had made of the proceeds, and to demand that they be paid over, or placed to the account of his wife. Instead of doing so, he acquiesced in a disposition of them which is consistent only with Mr. Peabody's version of the transaction,—that they were delivered to be collected and credited upon Mr. Stevens' account, which at that time showed an indebtedness of $6,012.50 on the purchase of a hundred shares of Western Union stock, and that Mr. Stevens assumed and exercised the right of ownership over them, without any notice that they belonged to his wife. But if the case is to turn upon the question whether the plaintiff had sustained the *onus* which rested upon her of proving that these bonds were originally delivered by her to her husband for the purpose of collection only, the clear preponderance of evidence is against her. From the time of the execution and delivery of the stock power to her husband in 1884, and for nearly five years afterwards, it is not shown that she made any inquiry concerning the disposition of the proceeds of these bonds. It is shown that on July 23, 1884, the defendants delivered to her husband 50 shares of Western Union stock, registered in her name, which were part of the shares paid for by her bonds; that on September 25, 1884, she signed an order upon the Western Union Telegraph Company for the payment to the defendants of a dividend of $87.50 on said 50 shares of stock; that on December 24, 1884, she signed a similar order for a dividend of $75; that on July 7, 1887, she signed a communication to the defendants, saying that the 50 shares of Western Union standing in her name, and held by them, were to be regarded as standing against the account of her husband, to afford them additional protection; and that on December 5, 1887, she wrote to the defendants as follows: "I understand that fifty shares of the stock of the Western Union Telegraph Company, and one hundred shares of the American Cable Company, standing in my name, and which belong to me, are in your possession, with a transfer of power signed in my name by Mr. Stevens, as my attorney. I neither know of nor authorized such signature, and have to request that you will return to me the certificates." Mrs. Stevens is not positive whether she signed or did not sign the communication of July 7, 1887, authorizing the defendants to hold her Western Union stock against the account of her husband, but her husband admitted it, and it seemed to have been treated on the trial as genuine.

There is, however, no question about her signature to the other papers. The admittedly genuine documents signed by the plaintiff in 1884 and 1887 show that she knew of and ratified the purchase and transfer to her of 50 shares of the Western Union stock. They were part of the shares paid for out of the proceeds of her bonds. She does not attempt to account for their acquisition in any other way. She not only knew of and claimed them as her property, but in 1884 turned over the dividends to her husband's brokers. This written evidence furnished by her near the time of the original transaction, and her course of conduct for years, all showing that her husband had authority to make the disposition of her bonds which he exercised in turning them over to the defendants for his own account, is inconsistent with her denials made upon the stand as a witness in her own behalf. A judgment which rests solely upon the weight to be attached to the credibility and recollection of a party who is of course interested in the result, and who is contradicted by the party's own writings and conduct, should not be permitted to stand. *Kehr* v. *Stauf,* 12 Daly, 115, and cases cited. The judgment must be reversed, and a new trial ordered, with costs to abide the event.