Sedgwick, C. J.
A feature of this case is that there were no-exceptions taken upon the trial. A motion for a new trial was made, because the verdict was contrary to the evidence, and against the weight of evidence, and contrary to,Jaw. There are cases in this court which hold that, if during the trial the appellant has not asked a ruling or direction of the court in respect of matters which may be the ground of a motion for a new trial, then he is deemed to have waived such matters, and the motion for a new trial should be denied. But an appellant is then not without a'~ remedy. The general term has the power to consider the case without regard to any exceptions having been taken, and, if justice calls for a new trial, will grant one. It may in its discretion grant one when, from mistake or oversight, something has happened which has led to a wrong result. The cases in which this can be done are very rare. It can be done when counsel by oversight, has not taken proper exceptions, and yet it is manifest that the justice of the case should protect the client. Of course, usually, if there has been -negligence in the case, the consequences must fall upon the one that has been guilty of it.
The action was for damages from the negligence of defendant. The plaintiff was 16 years of age. The defendant had hired her, and she had been1 in his employment for more than two years, as a corset maker. In the fifth floor of defendant’s building was the end of a shaft coming through the floor. It came through a horizontal hanger on the floor, and the top of the hanger was about-6 inches from the floor. The hanger was bolted to two beams, 6 inches apart. The beams were 26 inches long, 6 inches broad, and four inches high. These beams were bolted to the floor. The shaft at its top was 25 inches from the floor, but the hanger was 9 inches in height, so that the top was exposed in the air 16 inches. The most of these details come from the defendant as a witness in his own behalf. He was not contradicted in any respect, and his testimony on this subject is to be considered as true. The shaft was about 57 feet from the front of the building, and about 30- *569 feet from the rear, and about 87 feet from the head of the only staircase in the room. The plaintiff was the only witness in her behalf. I examined her testimony to find if the plaintiff gave any evidence that she was without negligence when she was caught by the shaft. She testified that, on the morning of the occurrence, she was washing the windows on the fifth floor. „ The floor had. nothing upon it, and during four hours, while working there, she did not see the shaft. At 12 o’clock she went downstairs, and came back. As she went upstairs, she did not know at that time-that the shaft was there. On cross-examination, she said, in answer to a juror; “Q. Could you see it when you got to the head of the stairs? A. Yes; you could see it. Q. You could see it clearly from the head of the stairs? A. Yes, sir.”
To counsel she said that the shaft was in plain sight from the head of the staircase, and a little to the right. She continued; “ And as I went, I was a little ways from the shaft. I did not know that the shaft was there, and the back of my dress caught on the shaft, and pulled me round the shaft”
She was two feet and a half away from the shaft when her dress caught on the shaft. The wind was blowing from one window to another.
“ Q. There was a draught there; the windows front and rear were both open; is that right? A. Yes, sir. H. When you noticed your dress caught there on the shaft, was that the first time you had noticed the shaft there? A. Yes, sir. The shaft was revolving when the dress was caught. It was one inch and a half in diameter, and about two feet high. Q. That was the first time you had seen this shaft? A. Yes, sir. I never knew of the existence of this shaft there until my dress was caught in it.”
The consequences were that one arm was torn from her body, and she was in other ways -seriously hurt.
I am of opinion that the testimony was incredible, and that it should have been so found to be by the jury; and in particular that it was not true that she never knew of the existence of the shaft “ until my dress was caught in it.” The evidence on this-point, to my mind, was intentionally shaped by her to avoid meeting the obligation of care that she would have to meet, if she, on approaching the shaft, had knowledge that it was there. Also, her testimony as to the way in which, as she said, her dress was caught in the shaft, without explanations and particulars due to the case, is incredible. She was two feet and a half from the shaft. There was a draught of air between the windows. The back of her dress was taken by the wind, and caught on the top of the shaft. The shaft was without projections. There was no explanation of what part of her dress was blown aside and up. Under general conditions, such an occurrence does not happen, excepting peculiar conditions also exist. There were no explanations. I think the judgment should be reversed, and the verdict set aside, and a new trial ordered; but, upon payment of the costs and disbursements of the term at which the trial took place,, without costs of appeal to either party.