The judgment and order appealed from should be affirmed, with costs.

BISCHOFF and PRYOR, JJ., concur.
Judgment and order affirmed, with costs.

---

Matter of the Accounting of JOSEPH POOL, Assignee.

(New York Common Pleas—General Term, May, 1894.)

An assignee for creditors is properly charged with the profits realized on a stock transaction of his assignor, although he claims that the assignor's interest therein was assigned to him two days before the general assignment, where this is denied by the assignor and the testimony of the assignee in relation thereto is inconsistent and conflicting.

So, also, he is chargeable with the value of certain bonds held by him as collateral, which he claims to have returned before the assignment, but which are shown by subsequent letters written by him to have been then in his possession, where his only explanation of such letters is that they were not true, but were written to deceive the creditors.

A credit of payments alleged to have been made on account of a preferred debt cannot be allowed where it appears that they were made to the assignor personally and no receipts therefor were taken, and it is not shown that such payments were turned over to the creditor.

The expenses of a litigation over the accounts of an assignee for creditors, in which the assignee has been unsuccessful as to every material issue, should not be charged against the estate.

APPEAL from a decree confirming the report of a referee on the accounting of the assignee under a general assignment executed by Hiram Pool.

The following is the opinion of the court at Special Term:

DALY, Ch. J. The matters upon which I reserved my decision were: (1) As to the sum of $3,028.50 derived by the assignee from the Ford account, which he claims as his own property, but with which he has been charged by the referee

as part of the assigned estate; (2) as to the sum of $4,197.25, the value of three bonds of the Columbus, Hocking Valley & Toledo railroad of the par value of $3,000, and the coupons thereof and interest, which bonds the referee finds that the assignee had in his possession at the time of the assignment as the property of the assignor and for which he has failed to account; (3) the sum of $3,167.95, the value of two bonds of the Mutual Union Telegraph Company, with coupons and interest, with which the referee has charged the assignee for the same reasons; (4) the sum of $3,000, which the referee has disallowed on the ground that it was an advance of money to the assignor personally and not a payment to his wife, Clara L. Pool, a preferred creditor. As to the Ford account: Just prior to the assignment the assignor had an account with one Ford, his broker, in an operation in Erie Second bonds. Ford held as collateral to the account certain bonds and $1,285 in cash. Two days before the assignment the assignor transferred this account to the assignee. Was this transfer a gift, as the assignee claims? At the time of the transfer there was a profit in the account which the assignor could have realized if it were closed out then. When it was subsequently closed out there was realized from it over $3,000, which the assignee took and kept and now claims belongs to him. There is the testimony of the two brothers, the assignor and the assignee, as to the object of the transfer, and if it were merely oath against oath, I should not think the referee justified in charging the assignee with this money. But the testimony of the assignor is supported in the first place by the probability of the case, for he was certainly not in a position at the time to make a gift of any assets upon which he could expect to realize then or thereafter, and, in the next place, the testimony of the assignee is inconsistent and unreliable. At one time he denies recollection of the transfer of the account; at another time, claims that he had turned the surplus over to his brother; at another time, that he had credited him with the amount; and finally claims another absolute transfer. Under these circumstances, it is not surprising that the referee has charged him

with the whole profit which it is undisputed he received upon this account and for which he paid no consideration to his brother. · As to the Hocking Valley bonds and the Mutual Union bonds : At the time of the assignment the assignee had in his hands seven Hocking Valley bonds and two Mutual Union bonds belonging to the assignor. This is established by two letters of the assignee bearing date respectively July 17 and September 26, 1885 (the assignment was made July 22, 1885). There is no dispute that in June, 1885, the assignee had received these bonds from his brother as collateral. His contention is that he had returned them before the assignment. There is no documentary evidence that such was the case. On the contrary, the letter of September twenty-sixth, after the assignment, states that they were still in his possession. It says : " You will understand that the bonds referred to in my letter as returned to you I still have, you not having called or received them ; and in view of the notes of Harvey being part of the Wallace collateral, a fact which I did not know at the time I received them, I will hold the bonds, and after paying my debt will turn over the residue to the estate, or such person as may be the owner or owners." The assignee meets this evidence contained in his own letters by simply affirming that the statement therein contained was not true. The object of the writing, according to his own statement, was to mislead the creditors and to manufacture evidence for that purpose. With such an avowal how can it be expected that his testimony that he returned the bonds can be believed ? The evidence of the return of the bonds rests upon his unsupported oath, and had the referee found in his favor upon that issue, we should have been compelled to reverse his judgment. *Kehr* v. *Stauf*, 12 Daly, 115 ; *Molloy* v. *N. Y. C. R. R.*, 10 id. 453 ; *Boyd* v. *Colt*, 20 How. Pr. 384. While alleged verbal admissions of a party are regarded as the weakest kind of evidence, his admitted written declarations make evidence of the strongest kind, and such writings, unexplained, are conclusive against him. It is true that the assignee offers an explanation of this letter, but such explana-

Misc.]            New York Common Pleas, May, 1894.

tion only shakes his credibility still more, for it shows him
engaged in deliberately concocting false evidence upon the very
point in issue, not for the purpose of this trial, it is true, but for
the purpose of misleading the creditors of the estate. The
referee should not do otherwise than charge the value of the
bonds against the assignee. It was proper to charge the highest
value up to the time of the trial, for there is no evidence that he
had disposed of the bonds, and, therefore, was still presumed
to have them in his possession. As to the $3,000 claimed to
have been paid on account of the preferred debt of Clara L.
Pool: These moneys were paid to the assignor personally
from time to time, no receipts were given and there is no
documentary evidence to show that they were paid or received
on account of Mrs. Pool's debt. Payments on her preferred
debt are evidenced by checks to her order, and the absence of
this formality is strongly against the assignee's claim. It is
undisputed that her husband was her agent generally, but there
is no evidence that the moneys he received were turned over to
her or applied in any way upon her account. It is not unreason-
able to expect that if these payments were intended by the
assignee as a charge against Mrs. Pool, vouchers to that effect
would have been exacted. None of the objections to the
account require that the report should be referred back.
Before affirming it, however, and signing as the final decree,
I shall require consents of the creditors, Miller and McClel-
lan, that they have had notice of this proceeding and consent
to the entry of the decree, as the citation does not appear to
have been properly served upon them. With respect to the
motion by the assignee for allowance of counsel fee, it seems
to me that the expenses of a litigation over these accounts, in
which he has been unsuccessful with regard to every material
issue, should not be charged against the estate. In an ordinary
action in equity neither costs nor counsel fee would be
awarded to the unsuccessful party, and the assignee stands in
that position. I shall allow costs and a counsel fee of $250
for the ordinary work of the accounting, apart from the
expenses entailed in trying the issues which have been dis-

posed of adversely to the assignee.   After the formal proofs required as above, the report will be confirmed.

*James W. Hawes*, for assignee, appellant.

*Alfred Taylor*, for Hiram Pool, assignor, and Clara. L. Pool, creditor, respondents.

*Per Curiam.*   After a critical examination of the evidence in the record and the voluminous briefs of counsel, we are satisfied, upon the argument of the learned chief judge, with the disposition of the case at Special Term, and we are content, on his opinion, to affirm the judgment.

Present: BOOKSTAVER, BISCHOFF and PRYOR, JJ.
Judgment affirmed, with costs.