(14 Misc. Rep. 599.)

HOPKINS v. CLARK et al.

(Common Pleas of New York City and County, General Term. December 16, 1895.)

1. FACTORS AND BROKERS—REPUDIATION OF PURCHASE BY BROKER.
    On an issue as to whether plaintiff repudiated in due time a purchase of stock made by defendant for him as his broker, where the only testi-

mony bearing on the point in addition to the directly contradictory testimony of the parties was correspondence, the statement of plaintiff that he repudiated the purchase by telephone on a certain day is not corroborated by his letter of the same day, merely discussing the advisability of the purchase, and, while referring to the telephone message, not speaking of it as a repudiation, and by his letter and telegram three days later, when the stock had fallen, in which he did repudiate the purchase.

2. APPEAL—MOTION FOR NONSUIT OR DIRECTION OF VERDICT.

On an appeal from an order of the court of common pleas at special term denying a motion for a new trial, appellant need not show an exception to the denial of a motion for a nonsuit at the close of the case, or for a direction of the verdict.

Appeal from trial term.

Action by Henry C. Hopkins against James F. A. Clark and others to recover a balance of $2,911.41, with interest from March 16, 1893, alleged to be due plaintiff from defendants as brokers. The defense was that, under authority conferred by plaintiff, defendants had purchased for the account of plaintiff 10 bonds, known as "Reading Thirds," that this purchase was acquiesced in by plaintiff, and that a sudden decline of the bonds resulted in a loss which more than absorbed the balance due plaintiff prior to the purchase. Plaintiff denied that the purchase was authorized by him, and claimed that he repudiated it promptly on being notified of it. From a judgment for $3,075 entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial on the minutes, defendants appeal. Reversed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

Cravath & Houston (Paul D. Cravath, of counsel), for appellants.
Cardozo & Nathan, for respondent.

DALY, C. J.    Whether the plaintiff did or did not authorize the defendant Campbell, in his discretion, to purchase stocks for his account, he was bound, on receiving advice of the purchase of the Reading bonds, to promptly give notice to the defendants, his brokers, that he disavowed their act. Unless he did so, he would be held to ratify it. Gold Min. Co. v. National Bank, 96 U. S. 640. Hesitation, to await the result of the market, would be enough to constitute ratification. Johnson v. Jones, 4 Barb. 369. He was bound to disavow in a reasonable time. Law v. Cross, 1 Black, 533–539; Hoyt v. Thompson, 19 N. Y. 218. It is undisputed that on February 18th, in Philadelphia, plaintiff received by mail from defendants, in Boston, the regular slip notifying him of the purchase. It was too late that day to communicate, but on Monday morning he had a conversation with Campbell, one of the defendants, by telephone. What that conversation was rests in the conflict of testimony of those two witnesses, who were equally interested in the action.

Plaintiff's testimony is:

"I asked Mr. Campbell what he had been doing,—if he had been buying some Reading. He said, 'Why?' I said he had no authority. We had never talked Reading, or anything else, except Lamson Cash Carrier, which he told me would be guarded. I said: 'I don't want anything to do with this. I want nothing to do with Reading. I want no speculation. You have no

authority to do that. What are you going to do?' He said, 'Buy some more for you, and hold it.' I said: 'I want nothing whatever to do with Reading. I will have nothing to do with Reading, or any other speculation.' That was the absolute sum of our conversation,—'I will have nothing to do with it.' "

The defendants' testimony as to the conversation over the telephone is:

"He discussed the situation or condition of the Reading Company, and the prospect, or the current rumors in Philadelphia, and his disturbances over the situation,—his fear that the security might go still lower; and, finally, he said he should want to rely upon me to look after the thing for him. He did not repudiate the transaction in any way. Q. Did he say anything about repudiating the transaction? A. He did not."

In this state of the testimony, it was merely oath against oath of two interested witnesses; and as the affirmative of proving disaffirmance rested on plaintiff, he failed to establish it. Griffiths v. Hardenbergh, 41 N. Y. 471; Stevens v. Trask (Com. Pl.) 18 N. Y. Supp. 117. Where the plaintiff and defendant, who were both men of fair character, and stand alike unimpeached, and are of equal credibility, are examined as witnesses, and contradict each other directly upon a question of fact, and their testimony is totally irreconcilable, in the absence of other testimony the case will stand evenly balanced, and the complaint will be dismissed. Losee v. Morey, 57 Barb. 561. Where the plaintiff swears unqualifiedly to a warranty, and the defendant as unqualifiedly and explicitly swears there was none, and there is no evidence in the case corroborating the plaintiff, he fails to make out a case, and the defendant is entitled to judgment. Raines v. Totman, 64 How. Prac. 493. Where the burden of proof rests upon the plaintiff, he testifying to a state of facts constituting a cause of action against the defendant, and the defendant giving testimony which, if true, proves that an entirely different state of facts existed, showing the plaintiff has no cause of action, neither party being corroborated by circumstances, or by other witnesses, the plaintiff fails to establish his demand, and cannot recover. Syms v. Vyse, 2 N. Y. St. Rep. 106. What corroboration of plaintiff's testimony is to be found in the case to sustain this verdict? On the evening of the day of the telephone communication, he wrote to the defendant, as follows:

"Friend Campbell: You can, perhaps, imagine my state of mind this p. m. I arrived home (in Phila.) Friday night. Saturday morning, when I went in town, I found the air literally alive with rumors of the Reading 'fiasco.' It was absolutely known here that they were in trouble, and probably more serious than they could pull out of. I did not rec. your letter until after banking hours Saturday, and you can imagine my surprise when I found you had bought Reading 3ds, when, as I say, it was known that the Drexels had thrown them over, and there seemed no probable way that they could escape bankruptcy. Nothing to borrow on. No money, debts that were known to be falling due, and they in the position of having antagonized their best friends. I got the telephone as soon as I could to you this morning, and although I told you of the receivership it was then too late for you to save anything. It seems to be the opinion here that the Lehigh Valley pulled McLeod down, with debts falling due and no money to pay, and that he has placed the Reading voluntarily in the hands of a receiver to protect the property, and that he will get help and pull out. Philadelphians have bagged lots of money, for they have all sold everything in

Reading right and left, and in fact anything in Reading securities here have been considered the wildest kind of a speculation for the last six months. Could you expect me to buy into a lawsuit? You know my position,—absolutely no income, and my future income dependent on the small sum I may have to put into some business. Please let me hear from you by return mail. I've got a fair amount of nerve, but I'll allow I have sensations tonight which I hope you may never experience. I am,

"Very truly yours, H. C. Hopkins."

In this letter there is no word of repudiation. In referring to the telephonic communication of the morning, he does not state that it was a disapproval of the purchase. The whole letter, on the contrary, is merely an argument against the prudence of buying Reading, and confirms the defendants' version of the telephone conversation, in which, as they say, plaintiff discussed the situation and condition of the company, the prospects, and the current rumors, and his disturbances over the situation, his fear that the security might go still lower. What need was there to ask defendants to let him hear from them by return mail, if the transaction had been already repudiated? On the 23d, three days afterwards, the plaintiff telegraphed and wrote to defendant that he positively declined to accept the purchases. If this had been already done on the 20th, it was needless to do so again on the 23d. If it had been done on the 20th, why was not that fact referred to in the letter of the 23d? On the other hand, that letter begins:

"I wired you this morning that I positively declined to accept purchase of Reading bonds."

That letter is consistent only with defendants' testimony that there was no previous repudiation. As the stock had declined steadily by the 23d, and the Reading road had passed into the hands of a receiver, this repudiation came too late. In the state of the market, disclosed in plaintiff's own letter of the 20th, it was his duty at that time to disaffirm the purchase; and it will be seen that the correspondence between the parties does not corroborate the testimony of the plaintiff that it was then repudiated, but rather confirms that of the defendants that there was no repudiation until the 23d. There being no preponderance of evidence on plaintiff's part, and the weight of evidence being rather that he did not disapprove the purchase, of which he received timely notice, he was not entitled to recover. Upon this state of facts, it is our duty to reverse the judgment and order a new trial.

On appeal from the order denying the motion for a new trial, made upon the ground that the verdict is contrary to the evidence, the order may be reversed if the verdict be against the weight of evidence. Code, § 999; Beyer v. Clark, 8 Misc. Rep. 416, 28 N. Y. Supp. 655. See, also, Clark v. Bank, 8 Daly, 481; Cheney v. Railroad Co., 16 Hun, 415; Wright v. Lecour, 9 Wkly. Dig. 6. On appeal from an order of our own court denying a motion for a new trial, the appellant need not show an exception to the denial of a motion for a nonsuit at the close of the case, or for a direction of a verdict. McCarthy v. Railroad Co., 10 Daly, 540. Though the evidence might have been sufficient to require submission to the jury, it is nevertheless the duty of the general term to grant a new trial if the ver-

dict be against the apparent weight of evidence.  Colt v. Railroad Co., 49 N. Y. 671.  And under more recent decisions, it is the duty of the trial judge to nonsuit, or direct the verdict, as the case may require, not only where there is no evidence upon an issue before the jury, but also where the weight of the evidence is so decidedly preponderating in favor of one side, that a verdict contrary to it would be set aside.  Linkauf v. Lombard, 137 N. Y. 417, 426, 33 N. E. 472; Hemmens v. Nelson, 138 N. Y. 517, 529, 34 N. E. 342.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.  All concur.