Samuel Bernstein, an Infant, by Ephraim Bernstein, his Guardian ad litem, Respondent, *v.* The Dry Dock, East Broadway and Battery Railroad Company, Appellant.

*Negligence — personal injury suffered in alighting from a horse street car — issue as to whether the attempt to alight was while the car was in motion — weight of evidence.*

On the trial of an action brought to recover from a street railroad company, on the ground of negligence, the damages resulting from a personal injury sustained by a passenger, a boy seventeen years of age, while alighting from the defendant's horse car, the plaintiff sought to establish as a ground of recovery that the car came to a full stop at his request and suddenly started while he was stepping to the ground from the steps of the front platform on which he had been riding, and claimed that this constituted negligence on the part of the defendant.

The defendant attempted to show that the plaintiff got off the front platform while the car was in motion, without notifying the conductor or driver that he wished to get off.

Upon this issue a verdict was rendered in favor of plaintiff.

*Held*, on a review of the testimony, that the plaintiff failed to sustain, by a preponderance of evidence, the issue tendered by him as a ground of recovery, and that the verdict was against the weight of evidence.

APPEAL by the defendant, the Dry Dock, East Broadway and Battery Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 15th day of December, 1892, upon a verdict rendered at the New York Circuit, and from an order denying the defendant's motion for a new trial made upon the minutes.

*John M. Scribner*, for the appellant.

*Benjamin W. Cardozo*, for the respondent.

FOLLETT, J.:

This action was brought to recover damages for personal injuries inflicted while alighting from one of the defendant's cars, caused, as it is alleged, by the negligence of its employees. At the time of the accident, October 15, 1889, the plaintiff was seventeen years of age and was living with his father at No. 106 East Broadway. Between six and half-past seven in the afternoon of that day, the plaintiff took a car on defendant's line at Thirty-fourth street for the purpose of riding to his father's residence and place of business. At or near Fourteenth street the plaintiff went to the front platform of the car and rode until the accident.

When the car reached No. 106 East Broadway, the plaintiff, while alighting from the front platform, fell under the car and its forward wheel passed over his right leg, rendering amputation necessary. The plaintiff sought to establish on the trial as a ground of recovery, that the car came to a full stop at his request and suddenly started while he was stepping from the steps of the car to the ground. The plaintiff did not attempt to establish that the defendant or its employees were negligent in any other respect.

The defendant sought to establish that the plaintiff got off the front platform while the car was in motion without notifying the conductor or driver that he wished to get off. This was the issue upon which the plaintiff's right to recover turned.

William Schugarmen, a witness called by the plaintiff, testified that he saw the car cross Pike street, which is 110 feet from the place of the accident, and that the horses were then trotting ; that he was walking on the northwesterly sidewalk and

was near the boundary line between Nos. 101 and 102 East Broadway. He said : " I heard a scream and I looked up and saw a boy tottering on the step of the car, and I ran to his assistance, but before I reached him he fell down and the front wheel ran over his leg. He fell face downwards and his right leg under the wheel and the wheel crossed it." He also testified that when his attention was attracted to the car by the scream it was moving at about the same speed as it was when it passed the corner of Pike street ; that he shouted to the driver, " down brake " and " stop " and that the driver did stop his car within six or seven feet, but too late to prevent the accident. This witness did not testify that the car stopped before the accident, and his evidence, to say the least, is as consistent with the theory that it did not as that it did stop. It cannot be said that this witness directly corroborates the plaintiff on the issue whether the car was stopped to permit him to alight.

Louis Bernstein, called as a witness by the plaintiff, testified that he saw the accident, and that it happened in June or July. He said : " I stood near 106 East Broadway. I seen the car coming along and a man wanted to descend from the car. The man called to the driver, ' Stop the car.' I saw him coming and he said, ' Stop the car,' and he did not stop the car. * * * The car was near Pike street when the man told the driver to stop ; they were about four houses distant from it." Later he modified his evidence and said that the plaintiff said, " Stop the car " when he was under it, and that he did not hear the plaintiff when he stood by the driver on the platform say, " Stop the car." This witness, who could not speak English, gave a very confused and contradictory account of what he saw or thought he saw and heard. He swore that the plaintiff asked to be let off when he was standing by the side of the driver and afterwards said that he did not. Upon the cross-examination he testified that the car stopped and then gave a sudden jerk directly in front of No. 106. He admitted that on the former trial he testified that the accident happened in the spring of the year. This is all of the evidence given in behalf of the plaintiff in support of the issue which he tendered and which he was bound to establish by a preponderance of evidence.

The defendant called the driver of the car, who testified that the plaintiff did not ask him to stop it, and that he left the car while it

was in motion.   The conductor testified that the car was not stopped until immediately after the accident, and he produced his report made at the time, which contains the same statement.   At the time of the trial the conductor had been discharged from the defendant's service.

William P. Murphy, called by the defendant, testified that at the time of the accident he lived at No. 106 East Broadway, and was standing in the door of that house when the accident occurred.   He said the car made no stop after passing Pike street until after the boy fell from the platform ; that when he attempted to alight the car was in motion.

Joseph Ivory, a policeman, testified that at the time of the. accident he was standing on the northwest corner of Pike street and East Broadway ; that he saw the car passing and that it did not stop until after the accident ; that he assisted in taking the boy from under the car.

Mendell Bluestone, called by the defendant, testified that he stood in front of 94 East Broadway, about 106 feet from the accident and saw it ; that the car had not stopped, but was going at the usual rate of speed until after the accident.

Emma Winterfield, a witness called by the defendant, testified that at the time of the accident she lived at 101 East Broadway, and was standing in front of her house at the time it occurred.   She swore that the car did not stop between Pike street and 106, and that it was in motion when the boy fell or jumped off.

Ida Winterfield, the daughter of the last witness, testified that she was on the northern side of the street about opposite 101, and that the speed of the car did not change between Pike street and No. 106 East Broadway, and that when the plaintiff fell it was in motion.

Thomas D. Merrigan was sworn in behalf of the defendant and testified that on the 15th of October, 1889, he was the senior assistant to the house surgeon of Gouverneur Hospital, to which the plaintiff was taken.   He testified : " Q. What did he (plaintiff) say to you while at Gouverneur Hospital in regard to the circumstances of this accident, and how he came to get hurt ?   A. He told me that he jumped off the car and was run over.   Q. Did he say whether or not the car was in motion at the time ?   A. Yes, sir ; he told me it was going.   Q. Did he say where he asked the driver to

stop? A. No, sir; he told me that he did not ask him to stop. Q. Did he say why he didn't ask the driver to stop? A. Yes, sir. Q. Why? A. He told me he didn't ask the driver to stop because he jumped off there a good many times before, and he didn't see why he could not do it again."

Frank H. Pellatier, called in behalf of the defendant, testified that on the fifteenth of October he was house surgeon at Gouverneur Hospital. He testified to a conversation between the plaintiff and the driver occurring a day or two after the plaintiff was taken to the hospital. " Q. Did the driver say to Bernstein on that occasion: ' If you had asked me to stop the car you would have saved all this trouble?' A. Yes, I believe that he did. Q. And did the plaintiff reply that he had jumped off that car a great many times before, and that he never had been hurt, and thought he was perfectly safe to do it again? A. He did."

Andrew J. Curran, a medical student, who was called by the defendant, testified that he was present at the conversation between the plaintiff and Dr. Merrigan. " Q. You may say what the doctor said to the plaintiff, and what the plaintiff said to him, if you please? A. Dr. Merrigan asked the plaintiff how he came to meet with the accident, and he said he jumped off the front platform of the car when opposite his home; and I believe Dr. Merrigan asked him why he didn't wait until the car stopped, and he said he often jumped off the car before and didn't see why he could not do it now, or words to that effect."

Charles Wilson, a witness called by the defendant, testified that he was employed in the hospital, and that about four days after the plaintiff came into the hospital "I asked him how he came to get by the accident, and he told me he went out to smoke and he jumped off the car as he had done so on several occasions before. Q. Did he say anything about the car being in motion at the time? A. Yes, sir; it was in motion at the time. Q. Did he say anything about requesting the driver to stop? A. No, sir; all he told me was he jumped off the car while it was in motion, and he had been in the habit of riding down town several times on that line. Q. On any other occasion did he repeat that statement of this circumstance to you? A. No, sir; he said it was very silly for him to do such a thing, and he wished he had his leg back."

The driver of the car testified to the interview with the plaintiff in the hospital in which the plaintiff told him that he jumped off the car when in motion.

We think the plaintiff failed to sustain by a preponderance of evidence the issue which he tendered as a ground of recovery, that the verdict was against the weight of the evidence, and that the judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

O'BRIEN and PARKER, JJ., concurred.

Judgment and order reversed and a new trial granted, with costs to the appellant to abide the event.