WILLIAM H. KIRK, Respondent, *v.* THE VILLAGE OF HOMER,
Appellant.

*Injuries resulting from an alleged defective condition of a village street — contributory
negligence — charge as to the duty of the village — to be construed as a whole.*

A municipality does not perform its whole duty in respect to keeping its streets
in a safe condition for travel by instructing its subordinates to ascertain the
facts in regard to their condition and report thereon.

Upon the trial of an action brought against a village to recover damages
received from a fall, caused by the alleged defective condition of one of its
streets, the court, among other things, charged the jury that it was the abso-
lute duty of the defendant, through its officers, to see to it that the public
streets and sidewalks maintained by it were put and kept in a reasonably safe
condition with reference to public travel, and that they were kept reasonably
and suitably safe for persons who desired to pass over and along the same. The
court also charged that a village might or might not construct a sidewalk, but that,
having constructed one, it was its absolute duty to see that such sidewalk was
at all times, both night and day, reasonably safe and suitable for foot passengers ;
that if such village had discharged its duty in that respect with such vigilance
as the law required, it was exempt from liability for any accident which might
occur ; that the village was not an insurer against accident, but that its officers,
in taking upon themselves the responsibility of the government of the affairs of
the municipality, say to those who are invited along and upon their walks and
streets, that they may go there with the assurance that the corporation and its
officers have performed their duty in all respects as to keeping the sidewalks in
suitable and safe repair.

The counsel for the defendant excepted to that portion of the charge in which it was
stated that an absolute duty rested upon the defendant to see that its streets and
sidewalks were put and kept in a reasonably safe condition for public travel, and
safe for people to pass over them, and also to that portion of the charge in
which it was stated that the obligation rested upon such municipality to keep
its sidewalks in repair, and that it must see to that duty, and that it was an
absolute duty.

The court stated that it did not say that it was an absolute duty to keep its side-
walks in repair, but that such municipality owed an absolute duty to the public
to keep its sidewalks in a reasonably safe and proper state of repair.

The counsel for the defendant then stated that he excepted to the proposition as
then charged, and also to that portion of the charge in which it was stated that
when a village had once constructed a walk it was its business to see that such
walk was kept reasonably safe for persons to pass over it all the time, so that
those who were invited to travel along its walks and streets might go there
with the assurance that the municipality had kept them safe and in repair.

*Held,* that the language used by the trial judge in the body of his charge and in response to the defendant's exceptions construed as a whole was proper.

In construing, upon an appeal, the charge of a court to the jury, isolated portions thereof should not be singled out, but the whole charge should be considered together.

APPEAL by the defendant, The Village of Homer, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cortland on the 12th day of January, 1893, upon the verdict of a jury rendered after a trial at the Cortland Circuit, and also from an order entered in said clerk's office on the 26th day of December, 1893, denying the defendant's motion for a new trial.

This action was brought to recover damages for injuries sustained by the plaintiff in passing along Hudson street, one of the principal streets, which had been used for many years, in the defendant's corporation. A sidewalk had been built and used many years on the south side of the street, and on Sunday evening, June 8, 1890, plaintiff attended the Baptist church and was returning therefrom when he received the injuries complained of. He was walking " right along at a good gait " when he came to a small bridge composed of two stones which covered a sluiceway under the sidewalk. The stone lying on the north side was about two feet wide on the west end and about two and a half feet wide on the east end as it lay over the sluiceway, and the stone on the south side was about two feet wide on the east end and a little less on the west end. The sluiceway was made by the corporation to carry off the surface water, and the sluice varied in depth from a foot at one end to a foot and a half at the other, and was about eighteen inches wide. The plaintiff, while passing over the bridge made by the placing of the stones over the sluiceway, stepped into the hole between the two stones, and his foot caught between them and he was thrown down, falling against the fence, and receiving the injuries complained of. He was assisted by some gentlemen who came along and obtained a conveyance and removed him to his home. The night was quite dark; there was no moon, and there was no light upon the street in that locality. It appears he was unable to use his leg for five or six weeks; it was painful and the knee was swollen; the muscles and ligaments of the knee were quite severely strained, and there was some evidence that the lubricating

waters of the knee were lost, and his knee, according to the evidence, was still stiff and lame at the time of the trial, and there was some evidence that his injury may be permanent.

*Kellogg V. Van Hoesen,* for the appellant.

*J. & T. E. Courtney,* for the respondent.

HARDIN, P. J.:

Appellant was incorporated in 1835 by a special act of the Legislature, chapter 290 of the Laws of 1835, and amendments were made by chapter 181 of the Laws of 1837, chapter 58 of the Laws of 1887, and chapter 386 of the Laws of 1889. Under the several acts the village is a highway district and its trustees are made commissioners of highways and are given such powers and duties as commissioners of highways in towns, except as otherwise limited, and they are authorized to appoint a superintendent of highways. It was conceded on the trial that the village had " a duly appointed and acting street commissioner of the village of Homer for one year prior to the time of this accident and down to that time." Defendant moved for a nonsuit at the close of the plaintiff's evidence, on the ground that he had failed to show any negligence on the part of the defendant, and also on the ground that he had failed to bring notice or knowledge of the existence of any defect in this walk to the defendant; and at the close of the whole evidence the motion was renewed upon the further ground " That it now affirmatively appears that the walk was repaired and put in reasonably safe condition on Wednesday or Thursday prior to the accident, and that the defendant cannot be charged with negligence if it got out of repair after that, unless it had notice of its condition and that it was out of repair after that time; and that the evidence fails to show that it had any notice of its defective condition after that time;" also, " That if it was out of repair after it had been repaired on Wednesday or Thursday prior to the accident, it was not out of repair for a period of time long enough to charge the defendant with constructive notice of its condition." The motions were denied, and the defendant took an exception. Defendant's witness, Porter, gave evidence to the effect that he had repaired the bridge on Wednesday or Thursday and left it in a good condition. Several witnesses

were called in behalf of the plaintiff, who testified that the walk, for a week or more before the accident, was in precisely the same condition that it had been for a year or so previous, and, after considering the cross-examination of Porter, the witness produced by the defendant, and all the evidence offered by the plaintiff relating to the condition of the walk, we think it was a question of fact whether the repairs were made as testified to by Porter, and, if repairs were made as he testified, whether they were properly made, and whether the walk was out of repair a sufficient length of time after the repairs were made by him, were questions of fact for the consideration of the jury, and we think that the trial court committed no error in refusing to take the case from the jury in respect to the question of the defendant's negligence in the premises. (*Pomfrey* v. *The Village of Saratoga Springs*, 104 N. Y. 459.) Eugene Kirk testified that he passed the sluiceway on the afternoon of Sunday, the day of the plaintiff's receiving the injuries, and that he observed the condition of the bridge. He says : " The north stone was a big stone, and the south stone was smaller, and was kind of jagged on the north side of the south stone where they came together, and the crack between was from two to five or six inches where they were separated ; they were further apart, I think, on the east side than on the west." After the method of repairs detailed by Porter was, by the evidence, before the jury, and after it appeared that the stones which formed the bridge over the sluice were supported by cobbles, it was for the jury upon all the evidence, to determine, *first*, whether the repairs were sufficient and adequate for the purpose of retaining the stones in position, and, *secondly*, whether they were placed in fact in close proximity so as not to leave the opening which was found by the witness whose testimony has just been quoted, and which was observed by other witnesses who testify upon the subject. That the bridge was in an imperfect and defective condition at the time the plaintiff received the injuries is scarcely denied by the evidence, and it was for the jury, under all the circumstances disclosed, to determine how long the bridge had been in a defective and dangerous condition ; and to determine, from all the evidence, whether it had been left in an improper condition for such a length of time as to properly challenge the notice of the defendant's authorities. (*Kunz* v. *City of Troy*, 104 N. Y. 344 ; *Foels* v. *Town of Tonawanda*, 75

Hun, 363.) We are of the opinion, after a careful consideration of all the evidence bearing upon the two questions of fact, that it was proper for the jury to consider whether the plaintiff was free from contributory negligence on the occasion, and that the evidence warranted a finding that he exercised reasonable care and was not guilty of contributory negligence, and, *secondly*, that the evidence tended to establish the fact that the defendant was guilty of negligence in leaving the walk in the condition in which it was at the time the plaintiff received the injuries alleged, and that the finding on that subject is not against the weight of evidence; on the contrary, we are of the opinion that the verdict is rational which establishes the fact that the defendant was guilty of negligence in leaving the walk in the condition in which it was at the time the plaintiff was injured.

The case of *Bernstein* v. *Dry Dock, etc., R. Co.* (72 Hun, 46) is quite unlike the case before us. In that case it appeared that the defendant while in the hospital admitted that he jumped off the car when it was in motion; and other evidence was found in the case quite strongly indicating that the plaintiff was guilty of contributory negligence. We are of the opinion that the weight of the evidence is not so distinctly preponderating in favor of the defendant that the verdict ought to have been set aside by the trial judge, and that it was not his duty to grant a nonsuit. The case, therefore, before us does not fall within the rule laid down in *Linkhauf* v. *Lombard* (137 N. Y. 426). It was for the jury to determine what credence should be given to the testimony of Porter on the subject of the repairs referred to in his evidence. (*Roseberry* v. *Nixon*, 58 Hun, 121; *Goldsmith* v. *Coverly*, 75 id. 48; 56 N. Y. St. Repr. 859, and cases there cited.)

In *Goodfellow* v. *Mayor* (100 N. Y. 18) the court repudiated the doctrine that a municipality "performs its whole duty in respect to keeping the streets in safe condition for travel by instructing its subordinates to ascertain the facts and report."

(2) In the course of the charge submitting the question of negligence to the jury the learned judge observed : " It is the duty of the defendant, through its officers, to see to it that its public streets and sidewalks, which are maintained by the village, and this duty, gentlemen, is an absolute duty on the part of the village, to see that its streets and sidewalks are put and kept in a reasonably safe con-

dition with reference to public travel; that they are kept reasonably and suitably safe for persons who desire to pass over and along upon them." And he also said later on : " They may construct or they may not construct a sidewalk; but, having constructed it, having made a way and invited the public upon it, they must see to it, and that duty becomes an absolute duty, that it is made at all times, night and day, reasonably safe and suitable for foot passengers. Have they performed that duty in this case ? " and after stating to the jury that if the officers of the municipality have discharged their duty in that respect with such vigilance as the law requires, they are exempt from all liabilities from any accident which occurs, he added : "And that is upon the theory that the village is not an insurer. Its officers do not say to any person, ' You walk along upon our streets, and you are assured and guaranteed against falling or against accident,' but they do say in taking upon themselves the responsibility of the position of the government of the affairs of the municipality — they do say to those who are invited along and upon their sidewalks and streets that they may go there with the assurance that the corporation and its officers have performed their duty in all respects as to keeping the sidewalks in suitable and safe repair. * * *" At the close of the charge the defendant's counsel said : " We desire to except to that portion of your honor's charge in which you say that it is an absolute duty resting upon the defendant to see that its streets and sidewalks are put and kept in a reasonably safe condition for public travel, and safe for people to pass over them." It is to be observed that this exception is broad and covers some language which the judge had used and which unquestionably was in accordance with the law, and, therefore, the exception may be regarded as too broad, as some portion of the language which was used was correct. The counsel continued in taking his exceptions and said : "Also to that portion of the charge in which you say that the obligation rests upon the defendant to keep its walks in repair, and it must see to that duty, and it is an absolute duty." In response thereto the court observed : " I did not say to the jury that it was an absolute duty to keep it in repair; I said they owe an absolute duty to the public to keep their sidewalks in a reasonably safe and proper state of repair." Thereupon the defendant's counsel observed : " We except to the proposition as now charged, and also to that portion of

the charge in which you say that when they have once constructed
a walk, then it is their business to see that it is kept reasonably safe
for persons to pass over all the time; so that those who are invited
to travel along their walks and streets may go there with the assur-
ance that they have kept them safe and in repair." The response of
the court was: "Take an exception to whatever I said." We think
the exception is somewhat indefinite. (*Ellis* v. *The People*, 21
How. Pr. 356.) Doubtless the trial judge intended to lay down the
rule approved in *Turner* v. *City of Newburgh* (109 N. Y. 305),
and we are inclined to think the language used by the trial judge
in the body of his charge and in response to the exceptions proposed
by the defendant when construed as a whole does not transcend the
rule found in the case of *Turner* v. *City of Newburgh*. In the course
of the opinion in that case GRAY, J., says: "Municipal governments
owe to the public the specific, clear and legal duty of putting and
maintaining the public highways which are in their care, or under
their management, in a good, safe and secure condition, and any
default in making them safe and secure, or in so maintaining
them, if occurring through the negligence of the officials, upon
whom a duty is devolved by law, will render the city liable. Where
the unsafe condition occurs through some other agency or instru-
mentality, negligence is not imputable until a sufficient time has
elapsed to charge the city officials with notice. Where a street is
thrown open for the public use, those who travel upon it have the
right to assume that it is in a reasonably safe condition, and if, with-
out fault of their own, or without knowledge of some existing
obstruction, they are injured while lawfully using the street, the
city is liable, unless the defect which has caused the injury has
existed for so short a time that the city officials, by the exercise of
reasonable care and supervision, could not have known of it. The
city is not an insurer of the safety of those who travel upon its
highways, and those who do so are bound to use their faculties and
are held to the exercise of ordinary care and prudence. The duty
of the city to keep its streets in a safe condition for public travel is
absolute, and it is bound to exercise reasonable diligence and care to
accomplish that end." The language used by the trial judge is so
like that used by the Court of Appeals in the case cited, that under

the circumstances we do not incline to hold that the trial judge was in an error. (See *Pettengill* v. *City of Yonkers*, 116 N. Y. 558.) Without picking out isolated parts of the charge, which we ought not to do, but considering the whole charge together, we think it was sufficiently favorable to the defendant. (*Caldwell* v. *New Jersey Steamboat Company*, 47 N. Y. 282; *Losee* v. *Clute*, 51 id. 494; *Crist* v. *The Erie Railway Co.*, 58 id. 638.)

Defendant contends the damages awarded were excessive. After the injuries a physician was sent for by the plaintiff and he attended the plaintiff for several days and examined the knee and ligaments of the knee and ankle, and apparently the pain was so great that the physician administered morphine hypodermically and bandaged the knee with hot poultices and cloth bandages, and that the plaintiff was obliged to remain upon a couch some two weeks before he sat up in a chair, and in about three weeks commenced using a crutch. The plaintiff testified that his knee pained him more or less every day and every night and that if he walked a good deal it pained him more than it would if he didn't do anything; and he testifies that the pain kept him awake nights and restless. The physician seems to have attributed the injuries to the synovial membrane and ligaments, and although no bones were broken he testifies that the injuries were along the muscles and membranes and soft tissues of the joint of the knee; and there was some evidence tending to raise the question whether the injuries would produce a rheumatic condition from which suffering would ensue. We are not prepared, upon a full consideration of the evidence, to say that the jury committed an error in awarding damages, or that the trial judge was in error in refusing to reduce the damages.

Some other exceptions are found in the case to which attention has been given, but we have discovered no error requiring us to interfere with the verdict of the jury.

MARTIN and MERWIN, JJ., concurred.

Judgment and order affirmed, with costs.