JOSEPH A. LINKHAUF et al., Respondents, *v.* JOSIAH LOMBARD et al., Appellants.

A plea of *ultra vires* cannot be availed of by a corporation as a defense against a contract obligation incurred by it, when the contract has been in good faith performed by the other contracting party and the corporation has had the benefit of it.

Where, therefore, a manufacturing corporation engages in business as a common carrier, it and not its officers individually, are liable upon contracts made by them for it in the prosecution of that business.

In an action to recover for goods shipped by plaintiffs upon a steamship of what was known and advertised as the N. Y. & M. Steamship Line, these facts appeared: The shipping contract was made by plaintiff with a person who signed himself as "agent." There was no such line incorporated, but the steamship enterprise was conducted by a manufacturing corporation. Defendants were officers of that corporation, and as such had the entire management and unlimited control of its business. They engaged the corporation in the steamship and other enterprises outside of its chartered powers, without having these transactions entered

upon the corporate books, and without any formal corporate sanction by the board of trustees. Defendants had no individual interest in the steamship business; the steamers were chartered by agents of the corporation; the moneys received were paid to and all expenses incurred were paid by it. *Held,* that defendants were not liable; that their neglect to secure authority from or to cover their acts by some action of the board of trustees, did not make them individually liable as partners to third persons; that while this neglect might give cause for proceedings by the state or by the stockholders, it would not constitute any ground for defense by the corporation, if sued upon its agent's contract.

Where there is no evidence upon an issue in an action before the jury, or the weight of evidence is so decidedly preponderating in favor of one side that a verdict contrary to it would be set aside, it is the duty of the trial court to nonsuit or to direct a verdict as the case may require.

(Argued March 2, 1893; decided March 14, 1893.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made January 13, 1892, which affirmed a judgment in favor of plaintiffs entered upon a verdict, and affirmed an order denying a motion for a new trial.

This was an action to recover the value of certain goods shipped by plaintiffs for transportation from New York to Mobile.

The facts, so far as material, are stated in the opinion.

*John A. Deady* for appellants. No liability whatever on the part of the defendants is shown. There is no pretense that Lombard, Ayres & Co., the corporation, was ever called upon to pay the claim, nor is it pretended that the company is not responsible pecuniarily; nor is it contended that the corporation was not legally organized and a corporation *de facto* and *de jure*. (*E. R. Co.* v. *Hawkes*, 5 H. L. Cas. 381; *S. & B. R. Co.* v. *N. R. Co.*, 6 id. 113; *E. R. Co.* v. *Hawkes*, 5 id. 297; *Bissell* v. *M. S. R. Co.*, 22 N. Y. 258; *Martin* v. *N. F. P. Co.*, 122 id. 165; *Welch* v. *I. & T. N. Bank*, Id. 185; *Palmer* v. *C. H. Cemetery*, Id. 431, 435; *Duffy* v. *O'Donovan*, 46 id. 223.) The learned justice who tried the case seemed to place the liability of the

defendants on the ground that they received the profits and paid the expenses. This was error. (*L. & F. Ins. Co.* v. *M. F. Ins. Co.*, 7 Wend. 31.) Even if the contract was *ultra vires*, the plaintiffs could have recovered from the corporation in a proper suit brought if the facts to maintain said action were proven. (*N. Y. & N. H. R. Co.* v. *Schuyler*, 34 N.Y. 49; *Kent* v. *Q. M. Co.*, 78 id. 186; *Bissell* v. *M. S. R. R. Co.*, 22 id. 258; *Woodruff* v. *E. R. Co.*, 93 id. 609.)

*Horace E. Deming* for respondents. The condition as to declaration of value and stamping the bill of lading before sailing was no part of the plaintiffs' contract with the steamship line. (*Blossom* v. *Griffen*, 13 N. Y. 569; *Bostwick* v. *B. O. R. R. Co.*, 45 id. 712; *L. & N. R. R. Co.* v. *Nieppe*, 78 Ala. 597; *G. F. Ins. Co.* v. *R. R. Co.*, 72 N. Y. 90; *Guillaume* v. *G. T. Co.*, 100 id. 491; *Swift* v. *P. M. S. S. Co.*, 106 id. 219; *Field* v. *Munson*, 47 id. 241; *Schroeder* v. *Frye*, 114 id. 269.) The defendants were partners in law. (*Whipple* v. *Parker*, 29 Mich. 369; *Connor* v. *Abbott*, 35 Ark. 365; *Kaiser* v. *L. S. Bank*, 56 Ia. 104; *Abbott* v. *O. S. Co.*, 4 Neb. 416; *Booth* v. *Wonderly*, 7 Vroom, 255; *Hill* v. *Beach*, 1 Beas. 32; *Coleman* v. *Coleman*, 78 Ind. 341; Bates on Part. §§ 4, 7; Morawetz on Corp. § 749; Beach on Priv. Corp. 281; *N. Bank* v. *Landon*, 45 N. Y. 410.) The defendants in this case were agents without a principal, and, therefore, principals themselves and, therefore, are liable. (Field on Corp. §§ 178, 179; *Fry* v. *Noble*, 7 Cush. 194.)

GRAY, J. The plaintiffs were a mercantile firm in Mobile, Ala., and have brought this action to recover for the value of goods shipped to them from New York, upon a steamship of what was known and advertised as the New York and Mobile Steamship Line. The shipping contract had been made with a person signing as "agent," merely; the paper being headed "New York and Mobile Steamship Line." The vessel was

lost upon the voyage and the defendants are sued as having been engaged as common carriers, under the name above stated, in the business of transporting freight and merchandise between the ports of New York and Mobile. Their answer denies that allegation. Upon the trial it was shown that the New York and Mobile Steamship Line was not a corporation, but a mere name or title; and the plaintiffs introduced evidence for the purpose of establishing that the defendants were associated together in transacting the business under that name. Upon the part of the defendants, evidence was given to show that the defendants were the officers and managers of a corporation, organized under the General Manufacturing Act of this state, and transacting business under the name of "Lombard, Ayres & Co," and that this steamship enterprise was conducted by that corporation, in connection with their chartered business; which was the "distilling and refining of petroleum" and the buying, selling or otherwise dealing "in all materials, apparatus and products necessary or useful thereto, or resulting therefrom, etc."

The defendants' counsel, at the close of the plaintiffs' proofs, moved to dismiss the complaint on the ground, among others, that no cause of action was shown against the defendants, and, when all the proofs were in, he moved to direct a verdict for the defendants, on the ground that no connection was shown between the plaintiffs and them in the contract. Both motions were denied and the denials were excepted to, and the question is thus raised as to whether there was any evidence for the jury to consider which established, or tended to establish, the fact that the defendants were associated in running this steamship line in their individual interest, and not the corporation of Lombard, Ayres & Co. If the evidence was conflicting upon that question; if it was open to opposing inferences by the jury, we should not be authorized to interfere with their verdict; but we are unable to find anything in the record, from which it could justly be inferred that these defendants were individually concerned in this enterprise; or that, in all its incidents, it was not conducted by and for

Lombard, Ayres & Co.; the defendants, as the managers of that corporation, having the management and direction of the steamship business, through agents, selected by them, at the two ports. This was made evident upon the testimony of the witnesses whom the plaintiffs called and examined. One of these witnesses, named Tweedy, had been a clerk of the firm of Bowring and Archibald, who chartered the vessels and his testimony was that that firm acted as agents for the corporation of Lombard, Ayres & Co. in securing the charter party; that they acted for a while as agents of the line and kept an account for each voyage, and that the expenses in excess of receipts were paid by Lombard, Ayres & Co., and when receipts were in excess of expenses, they would hand over a check to that corporation. From the evidence of that witness it would seem clear enough that the defendants did not inaugurate and run the line for themselves. Upon the evidence, however, of another witness, Haven, it is insisted that the jury were warranted in finding against the defendants, on the question of who were the principals behind the agent, who had made the contract with the plaintiffs. But his testimony does not, when fairly read, bear the construction, nor justify the inference contended for.

Haven was secretary of the Lombard, Ayres & Co. corporation, and he, particularly, managed this line of steamships. From his testimony, it appeared that the establishment of the line was determined upon between himself, and Mr. Lombard and Mr. Ayres, who were, respectively, the president and vice-president of the Lombard, Ayres & Co. corporation. Undoubtedly, between these three, the inauguration of this enterprise, its policy, management and all measures in the interest of the line were, or we must assume that they were, discussed and decided upon. There seems to have been no reference of matters to the action of the board of trustees of Lombard, Ayres & Co., and the official records of that company were said to be bare of any official action by that body in reference to the direction of the affairs of the line; and it appeared that those three gentlemen decided all such matters

by themselves, and in the most informal way, so far as the cor-
poration was concerned.    While from Haven's testimony it
did certainly appear that this line of steamers was started and
run, as the result of the informal action or decision of himself
and his two associates; that they controlled and managed it,
equally informally between themselves; that the board of
trustees of Lombard, Ayres & Co. did not act officially with
respect to it, and that the company's books contained no record
of resolutions, nor memoranda, upon the subject of the man-
agement of this line, nevertheless, it did appear, upon his
examination by plaintiffs, that Lombard, Ayres & Co. fur-
nished the agents of the line with the funds to pay its bills
and expenses; and, upon his cross-examination, that Mr. Lom-
bard and Mr. Ayres were the appointed managers of the
affairs of Lombard, Ayres & Co., having absolute control;
that the agents of the steamship line were the agents for that
corporation; that this line was run as one of its departments,
and that the witness, Lombard and Ayres were neither asso-
ciated together nor had any interest in the line, except as they
were interested in the corporation as stockholders and the
principal officers or managers.

The plaintiffs placed much reliance upon this evidence, in its
failure to show any facts making this steamship enterprise to
appear in any wise as a corporate matter, and because, from
the way it was started and conducted, it might fairly be
inferred that these three defendants were concerned in the
undertaking as individuals and not as trustees.    They argue
that this inference is not only warranted by the evidence; but
that it is borne out by the legal limitations upon the chartered
powers of Lombard, Ayres & Co., which, being incorporated
under the provisions of the General Manufacturing Act, was
legally incapable of operating a steamship line, or of acting as
common carriers in the transportation of merchandise.    They
say that there was a strong, if not a conclusive, presumption
that such an undertaking was no part of the corporate business
in which Lombard, Ayres & Co. was authorized to engage,
and they suggest that the trial judge should have ruled,

because of the provisions of the charter of that corporation, that there was no question of fact for the jury at all. Upon the proposition advanced, and assuming, for the purpose of the discussion, that it was without the chartered powers of Lombard, Ayres & Co. to charter vessels and to carry freight, we think a plea of *ultra vires* would have been unavailable as a defense to the corporation, if it had been sued upon an executed contract made by its agent. An extended discussion of this question is hardly necessary to be entered upon. It is sufficient for our purpose to say that the plea of *ultra vires* cannot be availed of to defend against an obligation incurred, when the contract has been in good faith performed by the other contracting party and the corporation has had the benefit of it. (*Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62; and see *Holmes* v. *Willard,* 125 id. 75–80.) The plaintiffs were dealing with the agent of an undisclosed principal and they had the option to sue the agent, or the principal when discovered. If they had sued Lombard, Ayres & Co., to enforce this liability under the contract of its agent, it could not have escaped by the plea of *ultra vires.* To admit of such a proposition would be to overlook the rule that the plea should never prevail when it would not advance justice. That a corporation has engaged in a business foreign to its chartered powers, might afford ground for complaint and action by its stockholders; but not for a defense to its liability to others, who have acted, under such circumstances as are here disclosed, in good faith in their dealings with its agents. We do not see that the argument referred to by the respondents in that connection has any force, or bearing, upon the question of whether the defendants were liable to the plaintiffs. The trial judge fell into a great misapprehension when, in his charge to the jury, he, in effect, instructed them that, in determining the question of the defendants' liability, they could consider whether the running of this steamship · line was not something foreign to, and independent of, the corporate business of Lombard, Ayres & Co., and not a necessary or proper incident of its business.

What had that to do with establishing the defendants' liability upon the contract? It might be perfectly true that the corporation had engaged in a business project not contemplated by its charter, and yet that fact would not go to establish a contract liability in the individuals who were its officers, and who had, as such, managed and directed the undertaking. If the evidence was such as to warrant two inferences; one, that the line was the individual enterprise of the defendants, and the other that it was an enterprise conducted as a department of the corporation, of which the defendants were officers, then the question to be submitted to the jury was, which of these two inferences they would draw. The inference that it was the individual enterprise of these defendants, must, however, be based upon evidence tending to establish the fact affirmatively and not negatively, that, if the corporation did not own the enterprise, because it could not lawfully do so under its charter, therefore, the defendants were associated in its ownership and conduct as individuals.

Returning then to the question of what evidence there is in the record to show that the defendants were engaged in this business enterprise, we find that, whatever may have been the language, or the more or less general expressions of the witness Haven, as to its inception upon the sole decision of himself, Lombard and Ayres, and as to its conduct in the same way; and however informal and irregular the undertaking, from the absence of any official or corporate action by the board of trustees or by the stockholders, Haven did positively testify that he, Lombard and Ayres had no individual interest in it, and that it was a department of the business of Lombard, Ayres & Co. Upon that evidence, supplemented, on the part of the defendants, by evidence showing that Lombard and Ayres had been appointed managers of Lombard, Ayres & Co., with full and absolute powers of control and management over, and relating to, its business affairs; that the steamers were chartered by agents for that corporation, in aid of its business, in order to procure staves and shooks for the manufacturing of barrels and cases; that no one had any

interest in that business, except as a stockholder of the corporation, and that moneys received were paid to and all expenses incurred were paid by the company; in that and like evidence we do not think that there was anything which justified an inference that the defendants were running this line as their individual enterprise.  Conceding to the testimony of Haven the widest sense, we could, at most, extract fairly from it that he, Lombard & Ayres, with apparently unlimited powers in relation to the affairs of the corporation of Lombard, Ayres & Co., engaged it in more or less independent enterprises, on their own judgment and without much, if any, regard to the chartered powers of their corporation and without going through the form of putting their acts in official guise, or seeking corporate sanction.  But, with all that in view, and with the positive and uncontradicted denials of any individual interest, it cannot be said to follow that, because of this utter indifference, or neglect, to secure authority from, or to cover their acts by, some action of the board of trustees, the officers became individually liable as partners to third parties.  As formerly suggested, such conduct, or misconduct, might give rise to proceedings by the state, or by the stockholders; but it would not constitute any ground for a defense by the corporation, when sued upon its agent's contract, as in a case like this.

At most, it was only open to a surmise that the defendants were individually concerned in running this steamship line and that was not enough to justify the trial judge in letting the case go to the jury.  To permit a jury to speculate and surmise upon a question of responsibility, is to withdraw from the litigant a safeguard intended for the protection of his rights.  He is entitled to the judgment of the court upon questions, to which the character of the evidence admits of but one answer.  No such possibilities of a failure of justice should be countenanced.  In the case of the *Improvement Company* v. *Munson* (14 Wall. 442), Justice CLIFFORD well said : " Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced

SICKELS—VOL. XCII.     54

by the party having the burden of proof, unless the evidence be of such a character that it would warrant the 'jury in finding a verdict in favor of that party.   Formerly it was held that if there was what was called a scintilla of evidence in support of a case, the judge was bound to leave it to the jury; but recent decisions of high authority have established a more reasonable rule; that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof rests."

The rule should be regarded as settled, under all the authorities, as well by the decisions of the courts of this state as by those of England, that, where there is no evidence upon an issue before the jury, or the weight of the evidence is so decidedly preponderating in favor of one side, that a verdict contrary to it would be set aside, it is the duty of the trial judge to nonsuit, or to direct the verdict, as the case may require.   Reference to the following cases will suffice.   (*Rudd* v. *Davis*, 3 Hill, 287; 7 id. 529; *People ex rel. Peck* v. *Board of Police*, 35 Barb. 651; *Herring* v. *Hoppock*, 15 N. Y. 409; *Wilds* v. *R. R. Co.*, 24 id. 430; *Corning* v. *Troy, etc., Factory*, 44 id. 577; *Neuendorff* v. *Insurance Co.*, 69 id. 389; *Dwight* v. *Germania Life Ins. Co.*, 103 id. 341; *Schofield* v. *Railway Co.*, 114 U. S. 615–619; *Gunther* v. *Ins. Co.*, 134 id. 110, 116; *Metropolitan R. Co.* v. *Jackson*, 3 Appeal Cases, L. R. 193, Lord BLACKBURN's opinion.)

Applying this just rule in this case, it is clear that the judge erred in submitting the question to the jury of the defendants' liability, when there was no evidence which could properly and justly have warranted them in finding against them, or which could have withstood the test of a motion to set aside the verdict.   If it could have been shown that the conduct of this line was the subject of recorded official action by the board of trustees of the Lombard, Ayres & Co. corporation, it could not have been pretended that the defendants were liable.

The cases referred to, where members of a corporation, continuing to do business after the expiration of its charter, have been held as partners as to third persons for the acts or contracts of agents; or where parties, who are actually partners *inter sese* and who do business under some corporate name, have been individually held to a partnership liability, have no application to this case, where the corporation was a going concern, but, as it is claimed, had engaged in a business beyond the scope of its chartered powers. The fact is that, however much it may have exceeded its authorized powers in engaging in such a business, nevertheless, it did engage in it and a contract liability arising thereout could not be avoided by any plea of having exceeded its powers. That was a question which concerned its stockholders, or the state, and not the plaintiffs. If the defendants could not have been deemed liable, had it been shown that the business of the steamship line was the subject of the official action of the board of trustees and was within the corporate management of Lombard, Ayres & Co., it does not follow, because of the loose, defective, or irregular way in which that corporation's interests were evidenced and managed, in that undertaking into which it had been launched by its managers, that the liability had shifted from it upon the individuals who were its officers or managers.

Our conclusion is that the trial judge erred in refusing to dismiss the complaint, or, subsequently, to direct a verdict for the defendants, and that the judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

All concur, except O'BRIEN, J., dissenting.

Judgment reversed.