Agnes E. Coloney and Others, by their Guardian ad Litem, Jay C. Coloney, Appellants, v. Edwin Farrow, Respondent.

*Dam — rights of riparian owner — flooding lands by a dam — prescriptive right to use flush boards, a question for the jury — proof of payment for such use.*

The maxim of the common law, that the owner of the soil has absolute dominion over the same indefinitely, both above and below the surface, and that whatever damage to others he may occasion by his rightful command over the soil is *damnum absque injuria*, has no application to a case where the owner of a dam so constructs, or employs it, as to set the waters back upon the lands of another proprietor.

A riparian owner so situated is entitled to recover the damages resulting from the flooding of his land.

Where a riparian owner brings an action to recover damages resulting from the flooding of his land, caused, as alleged, by the raising of a dam owned by the defendant, and a question arises upon the trial as to whether the defendant has a prescriptive right to use flush boards upon a dam previously constructed, the question is one of·fact, and should be submitted to the jury.

Where the defendant proves that flush boards were used by former owners of the dam, the plaintiff has a right to prove in rebuttal that when such former owners made this use of flush boards they paid for the right.

Appeal by the plaintiffs, Agnes E. Coloney and others, by their guardian ad litem, Jay C. Coloney, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Saratoga on the 23d day of October, 1894, upon the verdict of a jury rendered by direction of the court after a trial at the Saratoga Circuit, with notice of an intention to bring up for review on such appeal the order of the court granting a nonsuit and directing a verdict against them.

*T. F. Hamilton*, for the appellants.

*J. W. Houghton*, for the respondent.

Mayham, P. J.:

. This action was prosecuted by the plaintiffs to recover damages for an alleged flooding of plaintiffs' land, and to have the raising of a dam on defendant's premises, by which the alleged flooding was produced, adjudged and declared a nuisance.

The complaint alleged that the plaintiffs were the owners of cer-

tain lands situate in Saratoga county, through and along which flowed a stream of water, known as Anthony's Kill; that below the premises of the plaintiffs the defendant owned and occupied land on each side of said stream, and that he had erected and maintained a dam across said stream, by and in consequence of which the water of the stream was obstructed in its natural flow, and set back upon the lands of the plaintiffs, thereby flooding and drowning out ten acres of plaintiffs' land to such an extent that it became and was wholly valueless, by reason of which the plaintiffs sustained large damages.

The answer admits plaintiffs' title to their premises and the existence of the stream of water; that the defendant owns lands located below those of the plaintiffs on said stream; the existence and maintenance of a dam across said stream; but denies that in the year 1884, or at any other time, he raised the dam so as to flood or drown out the said ten acres of plaintiffs' land, or any portion of the same, or that he unlawfully or otherwise flooded the plaintiffs' land.

For a separate answer the defendant alleges that he purchased and became the owner in fee simple of the lands and premises occupied by him on both sides of Anthony's Kill, December 30, 1881; and that thirty years prior thereto the dam in question had been built across said stream, and had been maintained during all that time at the height at which it was at the time of the alleged injury to the plaintiffs, and alleges and avers that the said cause of action did not accrue within twenty years next before the commencement of the action.

The issue came on to be tried at the Saratoga Circuit in October, 1894, and at the opening of the case the defendant objected that the action was not one in which the plaintiffs had a right to trial by jury; that the same was solely and purely an equitable action.

The court overruled the objection, and the case was tried before the court and a jury.

The main contention on the trial was, as to whether the defendant in 1884, or at any time since that time, had raised the dam so as to flood the plaintiffs' land, or any portion of it.

On this branch of the case the plaintiffs introduced the testimony of several witnesses, proving, or tending to prove, the raising of the

dam by the defendant, and the consequent setting back or damming of the water, so as to cause the same to overflow the surface of the plaintiffs' land, and to so percolate the soil of the same as to destroy its productive qualities, and render it untillable, and of little or no value.

In support of that theory the plaintiff, Agnes E. Coloney, testified that nine acres of plaintiffs' land had once been productive and under cultivation, but after the raising of the dam the land became useless; that water was upon the land ankle deep, and that crops were flooded. She also testified to conversations with the defendant, in which she informed him that raising the dam had flooded the plaintiffs' land, and in which defendant admitted the raising of the dam, and told her he was going to raise it still higher; that he wanted more power to run his knitting mill and the electric plant of Mechanicville; that he wanted to buy the right to raise the dam; that the defendant also insisted that he had a right to raise the dam and should go on and raise it; also, that the dam was raised by the defendant fifteen inches; and, that in addition to this, defendant used two twelve-inch flush boards.

It was also proved that defendant said to one Coloney that he wanted to raise his dam eight inches, and wanted to get the right of plaintiffs to do so; that he needed the power; that he could buy an engine, but that the water power was cheaper.

There was also proved by Coloney that he heard defendant tell one Stiles that he had raised the dam and that he had acquired the right of the Delaware & Hudson people to raise it.

Thomas H. Laisdell testified that he had known the land for a number of years; had cultivated it, and purchased the nine acres at one time; that there was no water there when he last saw the land; that since the alleged raising of the dam it was covered by water.

Benjamin Freeman testified to his familiarity with the property before the alleged raising of the dam, and after; that the land before the flooding was worth $200 rental value per annum, and after the flooding was worthless.

George M. Moore testified that he had known the dam upon the premises for over twelve years; that the dam had been raised during that time; thinks over two feet; knows the dam was raised fifteen inches on the 16th of June, 1893, by flush boards, and that he took

them off against the defendant's will, at the instance of the plaintiffs.

Several other witnesses on the part of the plaintiffs testified in substance that the dam had been raised during the defendant's maintenance of it, and to the damage occasioned to plaintiffs' land by its being flooded.

At the conclusion of the plaintiffs' testimony defendant moved, on various grounds, to dismiss the complaint, and the motion was denied by the court.

On the part of the defendant, Charles E. Hicks, a civil engineer, was sworn, who testified to taking the elevation of defendant's dam and the level, from it to the land of the plaintiffs, and said that the lowest point of the plaintiffs' ground would be seventy-seven one-hundredths of a foot higher than the top of the flush board of nine and one-fourth inches in height; that the level of the top of the flush board would run out at a point about 400 feet north of Farrow's line in the creek. He also testified that when he made the survey in April the water did not run over the plaintiffs' land.

Daniel A. Baker, another witness sworn in behalf of the defendant, testified that he remembers the dam from forty-five to fifty years; that he repaired it in 1873 and built it at the height of the timbers in the old dam, and did not build it any higher; that years ago it was a log dam; that when he assisted in building it he put sleepers in and laid on plank, and that some of the old dam was there yet, and that the new dam was about the same in height as the old one; that he had observed the dam from year to year from 1872; that there had always been flush boards used in dry times; that he put them on two feet high; that the average height was about fifteen or sixteen inches; that he knew the piece of plaintiffs' land claimed to have been injured; that there was not any improvement or cultivation on this land twelve or fifteen years ago.

On the cross-examination he said that one Perry Abel had lived in a house on the thirteen acres; that he cultivated some of the thirteen acres, and that what he did not cultivate he pastured; that he had seen the creek come over the thirteen acres in times of high water; that between 1870 and 1876 he had seen flush boards on the dam, nailed on with brackets.

George W. Ostrander, another witness for the defendant, remem-

bers the dam at least forty years; was away from there from 1862 to 1863 or 1864, when he was in the army; has known the dam ever since; thinks there is two-thirds of the old dam there yet; the creek years ago upon the Coloney land was about as now; saw the land a few days ago, and noticed more water upon it than he was in the habit of seeing years ago; the flush boards were on defendant's dam.

John Baker, another witness sworn for defendant, remembers the dam since 1838; he testified that part of the dam that is there now was there when he was a boy; says that he had examined it recently, and did not observe anything of the present dam being higher or lower than the old dam.

Several other witnesses, familiar with this dam for many years, were sworn in behalf of the defendant, and gave evidence similar to that to which we have referred.

It will be observed on reading this evidence that there was on the trial a well-defined and sharp conflict between the testimony on the part of the plaintiffs and that on the part of the defendant.

There seems to have been abundant evidence on the part of the plaintiffs, standing alone, from which the jury would have been clearly authorized to find in favor of the plaintiffs, upon the two important questions:

*First.* As to the raising of the dam.

*Second.* As to the injurious effect to plaintiffs' lands of the water set back by the dam.

And that seems to have been the view entertained by the learned judge at the conclusion of the plaintiffs' testimony, when he refused the defendant's motion to dismiss the complaint.

It may also be added that, taking the evidence on the part of the defendant alone, the jury would have been clearly authorized to have found that there had been no interference with or raising of the dam by the defendant within the last twenty years, so as to cause the water to set back in the creek and overflow the plaintiffs' land.

Whether the plaintiffs' theory, established by their evidence, or the defendant's theory, established by his countervailing evidence, was correct, was clearly a disputed question of fact, which ordina-

rily, under our system of jurisprudence, should be determined by a jury.

It is true that, where there is such an overwhelming preponderance of evidence on the part of the defendant as to leave no reasonable doubt of the correctness of his theory, if there had been but a scintilla of evidence on the part of the plaintiffs in support of their theory, it would have been the duty of the court to take the case from the jury. (*Linkhauf* v. *Lombard*, 137 N. Y. 417; *Hemmens* v. *Nelson*, 138 id. 517.)

But it can hardly be said in this case that the plaintiffs furnished but a scintilla of evidence in support of their theory. The case, therefore, comes more nearly within the rule laid down by the court in *Pratt* v. *The Dwelling House Mutual Fire Insurance Co.* (130 N. Y. 206), where the court says : "If in any view of the evidence a verdict might have been rendered for the plaintiff, or if there were questions of fact which might have been determined for the plaintiff, and which, if determined in his favor, would have entitled him to recover, the case should not have been taken from the jury." (Citing *Sheridan* v. *Brooklyn City*, etc., *R. R. Co.*, 36 N. Y. 39; *Colt* v. *Sixth Ave. R. R. Co.*, 49 id. 671; *Train* v. *Holland Purchase Ins. Co.*, 62 id. 598.)

Applying that rule to this case, and it follows that if the jury found in accordance with plaintiffs' theory that defendant had raised the dam, and that, by so raising it, the water was forced back upon or percolated the soil of the plaintiffs so as to produce injury to their lands, then the plaintiffs would have been entitled to a judgment for the damages arising from such injury and for the other relief demanded in the complaint.

It is insisted by the learned counsel for the respondent, in his brief, that the rule of the common law has some application to this case, as laid down in Rice on Evidence (p. 1120), from which he quotes as follows : " It is a maxim of the common law that the owner of the soil has absolute dominion over the same indefinitely, above and below the surface; and that, whatever damages to others he may occasion by his rightful command over his own soil, is *damnum absque injuria*."

But it is difficult to see how that maxim can be applied to this case so long as the word " rightful " constitutes a part of the maxim.

For it cannot be contended, with any support of law or reason, that a man owning land through which a stream runs may obstruct the natural flow of that stream, or divert it to the injury of riparian owners on the line of the stream either above or below such owner; and the rule has been too long and too well settled to admit of a doubt, that the riparian owner upon whose land water is set back by a dam constructed by a riparian owner further down upon the stream, is not without remedy.

In *Hammond et al.* v. *Fuller et al.* (1 Paige, 197) it was held that where a party by erecting a dam raises a stream of water above its natural level so as materially to injure mills above on the same stream, a Court of Chancery will decree that the dam be lowered, and the party erecting the same pay all damage occasioned by the raising of the water above its natural level.

And in this case there appears to have been a great conflict in the evidence, and the court declined to pass upon that conflict without the intervention of a jury, and the case was submitted to a jury.

In *Stiles* v. *Hooker* (7 Cow. 268) it was held that "A grant is presumed from twenty years' uninterrupted use of water at a certain height, and if for twenty years the defendants have raised their water but five feet, and afterwards they raise it six feet by the same dam, and the additional foot injures the plaintiffs, they are entitled to damages."

In *Russell* v. *Scott* (9 Cow. 279) it was held that "The erection of a mill dam on one's own land, and flowing a neighbor's land for more than twenty years uninterruptedly, bars all right of action in the neighbor; but only for the dam as it stood. If it be raised and the flow increased within twenty years the action lies."

We are inclined to think that it was also a question of fact for the jury, under the evidence in this case, to determine whether or not there was a prescriptive right to the use of flush boards on this dam. The evidence upon that subject does not show such a continuous and uninterrupted use of flush boards as would raise by implication a prescriptive right in law, unless it be found that that right was acquired by constant and uninterrupted use of flush boards. Whether it was or was not, seems to us to have been a question of fact for the jury.

It is insisted by the learned counsel for the appellants that the

court erred in rejecting the testimony offered by witness Abel, who owned land on this stream next above the land of the defendant.

The defendant had proved the use of flush boards under former owners of the dam, to wit, Haskins and Stevenson.

The plaintiffs called Abel to prove that when Haskins and Stevenson used flush boards they paid for the right. That evidence, we think, was competent to be submitted to the jury, as bearing upon the uninterrupted prescriptive right of the defendant to use flush boards on his dam, and it was error for the learned judge to exclude it.

At the conclusion of the trial the plaintiffs asked to go to the jury upon the disputed question of fact as to the prescriptive right to use flush boards on the dam, and as to the question whether the defendant had raised the dam to the plaintiffs' injury. This the court refused, and directed a verdict for the defendant.

We think this was error, for which the judgment should be reversed.

PUTNAM and HERRICK, JJ., concurred.

Judgment reversed and a new trial ordered, costs to abide the event.