## GROCKIE v. HIRSHFIELD.

(Supreme Court, Appellate Division, Fourth Department. March 21, 1900.)

FRAUD—SALE OF ·LANDS—MORTGAGE—MISREPRESENTATION—CONFLICTING EVIDENCE—DIRECTING A VERDICT.

Where the issue was defendant's misrepresentation that lands deeded by him were clear, when in fact they were covered by a mortgage, and the evidence was conflicting as to whether he had so represented them, and a paper was introduced, signed by plaintiff, purporting to be executed at the time of the deed, and reciting that plaintiff understood the mortgage existed, and plaintiff claimed to have but slight knowledge of English, and

that he did not know the contents of the paper, it was error for the court to direct a verdict for defendant.

Appeal from trial term, Monroe county.

Action by Anthony Grockie against Marcus Hirshfield. From a judgment in favor of defendant, plaintiff excepts. Exceptions sustained.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

George D. Reed, for plaintiff.
Selden S. Brown, for defendant.

LAUGHLIN, J.   This is an action to recover damages for alleged fraud and deceit in the sale of real estate.   The plaintiff is a Polander, and is unable to read or write the English language, or to speak or understand the same, except to a very limited extent.   In 1888, the defendant, a member of the Rochester bar, not in active practice, was extensively engaged in the real-estate business, and owned a large tract of land in the town of Gates, Monroe county, known as the "Pool Farm," which was · subdivided into lots.   On the 5th day of November, 1888, the plaintiff and defendant executed a land contract, whereby the defendant agreed to convey to the plaintiff one of these lots, with the house and barn thereon; the plaintiff then being in possession thereof as a tenant.   The consideration was $1,250, payable $50 down, and the remainder in monthly installments of $13 each, with interest.   The plaintiff was to remain in possession, and pay the taxes and assessments, to keep the buildings insured, and to receive a warranty deed upon making the final payment.   It was expressly provided that, if the plaintiff should fail to perform the contract, the defendant should have the right to declare it void, retain the payments and improvements, treat the plaintiff as his tenant holding over without permission, and take immediate possession and remove him therefrom.   The plaintiff, although paying considerable from time to time, failed to make the payments in the amounts or at the times required by the contract.   The defendant did not, however, elect to declare the contract forfeited, but continued to receive such payments as the plaintiff was able to make, and on the 8th day of August, 1895, executed and delivered to the plaintiff a quitclaim deed of the premises, receiving back a bond and mortgage, executed by the plaintiff, to secure the payment in one year from that date of the balance owing on said contract, being the sum of $797.88.   In the year 1898, the East Side Savings Bank of Rochester foreclosed a mortgage made by the defendant in 1883, covering the whole tract of land owned by him.   The plaintiff was made a party to that action, and on the foreclosure sale the entire premises were struck off to the bank for $4,600, and it obtained a referee's deed thereof on the 14th day of June of that year.   The plaintiff subsequently purchased the lot of the bank for $900.   Upon the trial the plaintiff and one Keller, who was present to look after plaintiff's interests, on account of his unfamiliarity with such matters, and his inability to speak or understand English, testified that at the time the land contract was ex-

ecuted the defendant represented that the premises were free and clear, and that there was no mortgage thereon. The plaintiff and one Fluge, who accompanied him to examine the papers in his behalf, when the deed, bond, and mortgage were executed, testified that like representations were made by the defendant at that time. The plaintiff also testified that he relied on such representations, and was induced thereby to sign the contract, make the payments, and execute the bond and mortgage. These are the facts shown by the plaintiff to substantiate his claim for fraud and deceit.

On the question as to how the plaintiff came to receive the deed before he was entitled thereto under the land contract, both parties agreed that this was at the suggestion of the defendant, on account of his impending financial embarrassment. The defendant testified, and in this he was corroborated by his brother, that before the execution of the land contract he informed the plaintiff about the blanket mortgage held by the bank, and that he would have the premises released therefrom in time to give plaintiff a clear title. He also testified, and his wife and mother-in-law substantially corroborated him, that it was expressly understood when the deed was given that the defendant was under no obligation to perform the contract, the plaintiff being in default, but that he did so with a view to protecting the latter in the payments theretofore made. A paper was introduced in evidence by the defendant, as Exhibit 5, which it was conceded was signed by the plaintiff, and which purported to have been acknowledged by him the same day as the deed and mortgage, and before the same notary, James Briggs, who died before the trial. This paper was as follows:

"Marcus Hirshfield has this day deeded to me lot 19, in the Pool Farm tract, in the town of Gates, and I have given him a mortgage to secure $797.88, being part of the purchase price. I understand that there is a mortgage to the East Side Savings Bank for about $2,400, covering this lot and other property. Should this mortgage to the East Side Savings Bank ever be foreclosed, so as to cover said lot 19, and cause me to be dispossessed therefrom, then I am not to be held in said bond and mortgage. The above deed is given in pursuance of a land contract dated November 5, 1888, which land contract has, however, been long since forfeited on my part by reason of nonpayment, and said deed is given to me by said Hirshfield by my request and for my benefit, and not as a revival of any obligation on his part under said land contract.
"Anthony Grockie."

The defendant testified that this paper was signed by the plaintiff at the time he executed the bond and mortgage, and after its contents had been explained to him in both English and German. The defendant's wife says he read Exhibit 5 to the plaintiff, and the mother-in-law says he read it in both English and German. The plaintiff and said Fluge, who was distantly related to him by marriage, denied that any one was present when the deed, bond, and mortgage were executed, except the defendant and themselves, and they also denied that said Exhibit 5 was executed or presented, read, or referred to at that time. The plaintiff testified that he signed Exhibit 5 on a prior occasion, and did not know its contents, and could not read a word of it. In answer to a question as to what the defendant said when Exhibit 5 was signed, the plaintiff replied, "He said he would send that to the county clerk's office to sign the

deed." If it was signed on such prior occasion, there is no evidence that it was read to plaintiff.

The plaintiff's inability to understand and speak our language is further shown by the fact that, after answering a few preliminary questions, his testimony was given through an interpreter. He did not trust himself to transact important business alone, and the defendant found it necessary to explain the papers to him in both English and German. Exhibit 5 was not under seal. It recites no consideration, and was not pleaded as an estoppel or in bar. If, therefore, it is to be regarded as a mere declaration or admission, it was subject to explanation, the same as a receipt, without proof of fraud or mistake. Komp v. Raymond, 42 App. Div. 35, 58 N. Y. Supp. 909; Kirchner v. Machine Co., 135 N. Y. 182, 189, 31 N. E. 1104; Bridger v. Goldsmith, 143 N. Y. 424–429, 38 N. E. 458. But, if considered as a release or agreement, it would nevertheless have been subject to impeachment, as evidence in this case, for mutual mistake, fraud, or any misrepresentation by which the plaintiff was induced to sign without knowing its contents; for, as between the parties, the plaintiff's negligence, in not ascertaining the true contents, is not a bar to such relief. Komp, Kirchner, and Bridger Cases, supra; O'Meara v. Railroad Co., 16 App. Div. 204, 44 N. Y. Supp. 721; Kelly v. Mayor, etc., 16 App. Div. 296, 44 N. Y. Supp. 628; Dixon v. Railroad Co., 100 N. Y. 171, 3 N. E. 65; Shaw v. Webber, 79 Hun, 307, 29 N. Y. Supp. 437, affirmed without opinion in 151 N. Y. 655, 46 N. E. 1151; Cleary v. Electric Light Co., 19 N. Y. Supp. 951, affirmed in 139 N. Y. 643, 35 N. E. 206; Railway Co. v. Harris, 158 U. S. 326, 15 Sup. Ct. 843, 39 L. Ed. 1003; Warren v. Bank, 157 N. Y. 260–273, 51 N. E. 1036, 43 L. R. A. 256; Chapman v. Rose, 56 N. Y. 137.

While the testimony of the plaintiff is not very definite or satisfactory as to when Exhibit 5 was signed or as to how he came to sign it, yet the conflicting testimony as to his knowledge of the existence of the outstanding mortgage, the nature of the recitals contained in Exhibit 5, and the defendant's explanation for requiring its execution, when he was given only a quitclaim deed, and his subsequent written agreement, after he had been charged with fraud and threatened with prosecution, to pay the plaintiff's attorneys $100, and his payment to them of $50, but without assurance that he would be thereby relieved from further liability, required the submission of the case to the jury. In reaching this conclusion, we do not express any opinion as to the merits of the plaintiff's claim or of the defense. The court, in directing a verdict for the defendant, must have assumed that the plaintiff's testimony was untrue or unreliable, and that he executed Exhibit 5 with full knowledge of its contents. This was the province of the jury, and not of the court. Williams v. Railroad Co., 155 N. Y. 158, 49 N. E. 672.

The right of the trial court to nonsuit or direct a verdict where the weight of the evidence so preponderates in favor of one party that it would be the duty of a court to set aside a verdict if rendered against him, seems to be well established. Linkauf v. Lombard, 137 N. Y. 426, 33 N. E. 472; Hemmens v. Nelson, 138 N. Y.

529, 34 N. E. 342, 20 L. R. A. 440; Laidlaw v. Sage, 158 N. Y. 96, 52 N. E. 679; Dobie v. Armstrong, 160 N. Y. 594, 55 N. E. 302; Williams v. Railroad Co., 39 App. Div. 647, 57 N. Y. Supp. 203. But there is nothing in the record or order appealed from to show that the court directed the verdict on that theory, and, if it did so appear, it cannot be said as matter of law, on the facts here presented, that a verdict in favor of the plaintiff could not have withstood the test of a motion for a new trial, on the ground that it was against the weight of evidence. McDonald v. Railway Co., 46 App. Div. 143–146, 61 N. Y. Supp. 817.

The plaintiff's exceptions should be sustained, and a new trial ordered, with costs to the plaintiff to abide the event. All concur.